IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,
    Plaintiff,

    v.                                      **Civ. No. 11-820 JAP/LAM**

**$142,100.00 IN UNITED STATES CURRENCY,**
**$5,000.00 IN UNITED STATES CURRENCY,**
    Defendants,

**OSCAR ROGELIO GONZALEZ-RODRIGUEZ, FRANCISCO LUGO-CORONADO,**
    Claimants.

## MEMORANDUM OPINION AND ORDER

On April 7, 2014 the Government filed a motion for summary judgment asking the Court to enter an order forfeiting to the United States, all right, title, and interest in the $142,100 and $5,000 (Defendant Currency) that was seized from Claimants Oscar Rogelio Gonzalez-Rodriguez and Francisco Lugo-Coronado during an April 2011 traffic stop. *See* UNITED STATES' MOTION FOR SUMMARY JUDGMENT (Doc. No. 19) (Motion). The Government argues that: (1) the undisputed facts establish that the Defendant Currency was furnished, or intended to be furnished in exchange for a controlled substance and is subject to forfeiture under 21 U.S.C. § 881(a)(6); (2) the $142,100 claimed by Mr. Gonzalez-Rodriguez is subject to forfeiture under the Fugitive Disentitlement Doctrine, codified in 28 U.S.C. § 2466, because Mr. Gonzalez-Rodriguez is charged with a crime and has fled the jurisdiction of the United States; and (3) the Court should dismiss the claim and answer of Mr. Lugo-Coronado as a sanction for failing to participate in discovery. Claimants have not filed a response to the Motion. After a careful review of the pertinent law and uncontroverted facts, the Court finds that the Government has established by a preponderance of the evidence that the currency seized from Mr. Gonzalez-Rodriguez and Mr.

1

Lugo-Coronado was furnished, or intended to be furnished, in exchange for a controlled substance, as prohibited by 21 U.S.C § 881(a)(6), and therefore subject to forfeiture.

## BACKGROUND

### I. The April 10, 2011 Seizure

The following facts are undisputed. On April 10, 2011 at approximately 5:43 p.m., New Mexico State Police Officer Daniel Chavez conducted a traffic stop of a silver 2010 Dodge Charger driven by Mr. Gonzalez-Rodriguez and containing passengers Mr. Lugo-Coronado and Mr. Maravilla-Gomez. Declaration of Chavez, Exhibit 1 to Motion (Doc. No. 19-1) (Chavez Dec.) ¶ 2. Officer Chavez asked Mr. Gonzalez-Rodriguez for his license and registration, at which point Mr. Gonzalez-Rodriguez produced documents indicating that he had rented the vehicle. *Id.* ¶ 4. Officer Chavez spoke with Mr. Lugo-Coronado and Mr. Maravilla-Gomez, who initially said they were driving from Albuquerque to Mexico, but later stated they were travelling to Tucson, Arizona. According to Officer Chavez, Mr. Lugo-Coronado and Mr. Maravilla-Gomez appeared to be nervous and would not make eye contact. *Id.* ¶ 5. Moreover, Mr. Gonzalez-Rodriguez appeared "extremely nervous." *Id.* ¶ 3.

After issuing Mr. Gonzalez-Rodriguez a traffic citation, Officer Chavez asked if he could search the trunk of the vehicle. *Id.* ¶ 7. Mr. Gonzalez-Rodriguez consented, telling Officer Chavez there were no illegal narcotics or currency in the car. *Id.* ¶¶ 7-8. The search of the trunk disclosed a large suitcase belonging to Mr. Gonzalez-Rodriguez. Officer Chavez found seven duct tape wrapped blocks smelling of raw marijuana secreted inside the lining of the suitcase; the blocks were later confirmed to be bundles of U.S. currency amounting to $142,100. *Id.* ¶ 9. Officer Chavez also discovered a smaller suitcase which Mr. Lugo-Coronado claimed. *Id.* After obtaining Mr. Lugo-Coronado's consent, Officer Chavez searched the suitcase and found a

hidden compartment containing a clear, heat-sealed package with three bundles of currency amounting to $5000. *Id*.

At that point, Mr. Lugo-Coronado, Mr. Gonzalez-Rodriguez, and Mr. Maravilla-Gomez were detained for questioning and transported to the New Mexico State Police office in Socorro, New Mexico. Officer Chavez notified Special Agent Douglas P. Gooch of the Drug Enforcement Administration, who arrived, took possession of the currency bundles and other evidence, and eventually released the vehicle and all three passengers. Declaration of Gooch, Exhibit 2 to Motion, (Doc. No. 19-2) (Gooch Dec.) ¶ 11. Officers Chavez and Gooch averred that the concealment of large amounts of currency is consistent with illegal drug trafficking activities. The officers noted in their reports that the packaging method, currency denominations (mostly $20 bills), scent of raw marijuana, direction of travel, and conflicting destination accounts are consistent with illegal drug trafficking activities. Gooch Dec. ¶ 8; Chavez Dec. ¶ 11.

**II.   Procedural History**

On October 25, 2011, Mr. Gonzalez-Rodriguez and Mr. Lugo-Coronado filed claims against the currency. *See* VERIFIED CLAIM (Doc. Nos. 6,7). Roughly four months later, Mr. Gonzalez-Rodriguez was charged with drug trafficking conspiracy and distribution of methamphetamine in violation of 21 U.S.C. § 846. Forfeiture allegations in the indictment included the $142,100 found by Officer Chavez. *See* SECOND SUPERSEDING INDICTMENT, *United States v. Hovey et al.*, No. 1:11-cr-02672-WJ-15 (Doc. No. 105) at 11.  On May 22, 2012, the Government filed interrogatories requesting information from Claimants. Neither Mr. Gonzalez-Rodriguez nor Mr. Lugo-Coronado provided answers to the interrogatories. *See* CERTIFICATE OF SERVICE OF UNITED STATES' FIRST SET OF SPECIAL INTERROGATORIES  TO CLAIMANT FRANCISCO LUGO-CORONADO and UNITED STATES' FIRST SET OF SPECIAL INTERROGATORIES  TO CLAIMANT OSCAR

3

ROGELIO GONZALEZ-RODRIGUEZ (Doc. No. 14).  Following the advice of their attorney, Mr. Francisco Leon, both Mr. Gonzalez-Rodriguez and Mr. Lugo-Coronado declined to appear for their depositions on June 19, 2013.  *See* Declaration of Assistant United States Attorney (AUSA) Cynthia Weisman, Exhibit 4 to Motion (Doc. No. 19-4) ¶ 2. Mr. Leon stated neither he nor his clients would make an appearance because of the pending criminal case against Mr. Gonzalez-Rodriguez. *See* Leon Email, Exhibit 4b to Motion (Doc. No. 19-6). On June 22, 2013, Joel Meyers, the lead AUSA in the pending criminal case against Mr. Gonzalez-Rodriguez sent an email to Mr. Leon inquiring whether Mr. Gonzalez-Rodriguez intended to surrender himself, or remain a fugitive. *See* Meyers Email, Exhibit 4c to Motion, (Doc. No. 19-7). Counsel for Claimants stated he had lost contact with Mr. Gonzalez-Rodriguez and Mr. Lugo-Coronado. *See* Leon Email, Exhibit 4d to Motion, (Doc. No. 19-8). Subsequently, Plaintiff filed this Motion.

## DISCUSSION

### I.     Standard of Review

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted).  Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.* at 248.  The non-movant must show that there are genuine issues of material fact by supporting the non-movant's position with evidence. "A party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. The Local Rules of Civil Procedure require that "all material facts set forth in the Memorandum …be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b).

## II.     Forfeiture Under 21 U.S.C. § 881(a)(6)

The United States argues that Title 21 U.S.C § 881(a)(6) requires the forfeiture of Claimants' property. Section 8819 provides for the forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violations of this subchapter.

The burden of proof in forfeiture cases is stated in 18 U.S.C. § 983, which requires the Government "to establish by a preponderance of the evidence, that the property is subject to forfeiture." § 983(c)(1). Forfeiture requires a "substantial connection between the property and the offense," based on evidence "that the property was used to commit or facilitate a criminal offense." §§ 983(c)(2), 983(c)(3). If the Government makes a prima facie showing that the property is subject to forfeiture, a claimant may assert as a defense that the claimant is an innocent owner. § 983(d)(1). An "innocent owner" is one who (1) "did not know of the conduct giving rise to forfeiture; or (2) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 983(d)(2)(A). A claimant may not rely on unfounded pleadings or allegations contrary to

established facts, but must produce evidence admissible at trial in support of a legitimate claim. *United States v. 16328 South 43rd E. Ave,* 275 F.3d 1282 (10th Cir. 2002).

A criminal conviction is not necessary to allow a civil forfeiture. *See United States v. Ursery*, 518 U.S. 267, 275-76 (1996) (discussing the modern inapplicability of a common law principle requiring a criminal conviction prior to the initiation of a civil forfeiture claim). While considering a motion for summary judgment the Court must construe the facts in the light most favorable to the non-moving party, but the Court must also take a common sense approach under the totality of the circumstances, when inferring that property was related to illegal activity in a forfeiture case. *United States v. 5910 S. Ogden Court*, 913 F. Supp. 2d 1037, 1042 (D. Colo. 2012).

A variety of factors carry probative value in establishing a substantial connection to illegal activities. For example, factors tending to establish a valid forfeiture include: 1) a large amount of currency seized, 2) methods of packaging or concealment consistent with drug trafficking, 3) conflicting statements given during questioning, 4) use of a known drug route, 5) detection of illegal drug residue by scent or drug dog alert, 6) lack of evidentiary support for claims that the currency is not related to illegal activities, and 7) apparent nervousness during questioning. *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274-1275 (10th Cir. 2007). In *U.S. v. $252,300.00*, the Court discussed the relative value of various factors, finding that evidence of nervousness, concealment, or the use of a particular route, were not highly probative factors. However, the Court placed significant weight in the probative value of inconsistent statements, suspect packaging and concealment methods, detection of drug residue, and the seizure of a large amount of currency. *Id.* In *U.S. v. 252,300.00*, the Tenth Circuit Court emphasized that the concealment of a large amount of currency alone constitutes strong evidence

that the currency was furnished or intended to be furnished in the furtherance of illegal activity. *Id. See also United States v. $149,442.43 in U.S. Currency,* 965 F.2d 868, 877 (10th Cir.1992).

Accordingly, the probative facts strongly suggest that the $142,100 and $5,000 seized in this case were substantially connected to illegal activities. The present circumstances draw strong parallels to cases in which courts have previously concluded that such a connection existed. In *United States v. $60,020.00 U.S. Currency*, No. 08-CV-6286, 2011 WL 4720741, at *1, *11 (W.D.N.Y. Sept. 12, 2011) (unpublished), the Court found that the Government showed by a preponderance of the evidence that currency seized from a passenger travelling through an airport was subject to forfeiture. The passenger failed to remove all objects from his person during a security search and had concealed currency on his person which was wrapped, taped, and bound with rubber bands. The passenger provided vague and conflicting answers when asked about the origin, purpose, and amount of the currency. *Id.* at *1-2. A drug detection dog detected an odor of methyl benzoate, a chemical by-product of cocaine, on the currency. *Id.* at *3. The Court found that the currency should be forfeited.

In *United States v. $107,840.00 in U.S. Currency*, 784 F. Supp. 2d 1109, 1129 (S.D. Iowa 2011), the Court found a substantial connection between a drug offense and currency seized during the search of a private vehicle. In rendering summary judgment in favor of the Government, the Court noted that the claimant failed to offer a credible origin of the currency and gave inconsistent statements to police. *Id.* at 1128. The Court also noted that a drug dog alerted to the scent of narcotics on the currency, that the amount of cash was unusually large ($107,840), that the currency was composed mainly of small bills including $20 bills, and that it was concealed in a suitcase liner and heat wrapped in plastic. *Id.* Thus forfeiture of the currency was proper.

After analyzing the present set of facts in light of case law and the probative factors listed above, the Court concludes that the undisputed facts offered by the Government are sufficient to prove by a preponderance of the evidence that the currency in question had a substantial connection to illegal drug trafficking activities. The large amount of currency and high quantity of $20 bills, the methods of packaging and concealment, the nervousness and inconsistent answers regarding the intended destination given by the vehicle occupants, and the smell of raw marijuana establish by a preponderance of the evidence that the currency was either the product of, or intended for the purchase of, illegal drugs. Nearly all of the factors which were found to be probative by the Tenth Circuit are present in this case. Additionally, Claimants have not backed their claim against the currency with admissible evidence, have failed to undergo discovery or appear at their depositions, and have not raised an innocent owner defense under 18 U.S.C. § 983(d)(1). Based on the undisputed facts, the Court finds that the currency claimed by Mr. Lugo-Coronado and Mr. Gonzalez-Rodriguez was furnished, or intended to be furnished, in exchange for a controlled substance, and is forfeitable pursuant to 21 U.S.C § 881(a)(6).

IT IS THEREFORE ORDERED that UNITED STATES' MOTION FOR SUMMARY JUDGMENT (Doc. No. 19) is granted.

_____
SENIOR UNITED STATES DISTRICT JUDGE